**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Sidney Quiros,

     Plaintiff,                         Civil Action File No.:

v.

Online Information Services, Inc.,       **COMPLAINT WITH**
                                         **JURY TRIAL DEMAND**

     Defendant.

_____

## PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 et seq.

## PARTIES

1.    Plaintiff, Sidney Quiros, is a natural person who resides in Whitfield County, Georgia.

2.    Defendant, Online Information Services, Inc., is a corporation authorized to do business in the State of Georgia and can be served with process

via its registered agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

4.      This Court has personal jurisdiction over Defendant because, inter alia, Defendants frequently and routinely conducts business in the State of Georgia, including the conduct complained of herein.

5.      Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      Venue is proper in the Atlanta Division because the Defendant maintains its registered agent in Gwinnett County which is in the Atlanta Division.

## FACTUAL ALLEGATIONS

7.      Plaintiff is allegedly obligated to pay a consumer debt arising out of utility services and is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

8.      Defendant is a collection agency specializing in the collection of consumer debt.

9.      Defendant uses interstate commerce and/or mail in its business in the collection of consumer debts.

10.     Defendant markets itself out as a national collection agency, writing on its website, "Online Information Services, Inc. is the nation's leading developer of credit risk assessment and debt recovery solutions...Online is committed to your success and focused on one simple goal: **to eliminate bad debt**." www.onlineis.com/start/. (Last visited February 26, 2020)

11.     Defendant manages, and collects upon, thousands of consumer debt accounts annually.

12.     Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13.     The Plaintiff has, over the last several months, taken steps to learn more about her credit profile including obtaining her credit reports from the three major vendors…TransUnion, Experian, and Equifax.

14.     In reviewing her credit report from TransUnion she discovered a negative tradeline reported by the Defendant.

15.    On  February 12th, 2020,  Plaintiff placed a call to Defendant to obtain more  information  about  the  account  and  how  she  could  resolve  the  outstanding debt.

16.    She was connected with an individual identifying herself as Robin on behalf of the Defendant.  After verifying the Plaintiff's identity, Robin identified her employer as a debt collector and confirmed that they were collecting on an account from Dalton Utilities in the amount of $606.51.

17.    The Plaintiff explained how she became aware of the delinquent account and expressed her desire to resolve it, preferably by establishing a payment plan.   The Plaintiff also expressed her desire to improve her credit score by securing a deletion of this tradeline if possible or, if that was not offered, to get the account paid off in the hope of improving her credit score.

18.    The Defendant advised Plaintiff that it does not delete an account even when payments are completed. The Defendant advised that once the account is paid, they will report the zero balance to the three major credit bureaus as paid in full.

19.    In addressing the Plaintiff's request for arranging a regular payment schedule the Defendant advised that the creditor insists on payment of the full

balance, but they are given discretion to establish payments of $160.00 a month until the account is paid in full.

20.     The Defendant stressed that it does not send out confirmation of the payments nor does it advise any other party that payments are being made. Instead, they simply update the credit bureaus with the current balance.

21.     The Defendant specifically stated that it would not reflect the monthly payment in its reporting to the three credit bureaus.

22.     Credit reporting is governed by the 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act (the FCRA).

23.     A data furnisher, such as the Defendant, has an affirmative duty to update the information provided to a credit reporting agency to maintain accuracy and completeness per the FCRA, 15 U.S.C. § 1681s-2(a)(2)(B).

24.     Upon information and belief, Defendant's agreements with Transunion and Experian require Defendant to report account information on a regular basis or schedule.

25.     Moreover, per 15 U.S.C. § 1681s-2(a)(1)(A) a furnisher of credit information "…shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

26.    Thus, in the event the Plaintiff made partial payments on the account being collected by the Defendant, Defendant was obligated, as a matter of law, to reflect those payments as well as the adjusted balance in its reporting.

27.    A standard field of information on a credit tradeline as reported by Experian and Equifax is the amount of the last payment and date of last payment.

28.    Reproductions of the tradelines reported by Defendant to these two credit bureaus appear below with the fields identified circled for ease of identification…



**EQUIFAX**                   SIDNEY QUIROS | Feb 10, 2020                   Page 32 of 40

| Summary | Revolving | Mortgage | Installment | Other | Statements | Personal Info | Inquiries | Public Records | Collections |

---

## 10. Collections

Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score.

**Date Reported: Jan 21, 2020**

| | | | |
|---|---|---|---|
| Collection Agency | ONLINE INFORMATION SERVICES | Balance Date | Jan 21, 2020 |
| Original Creditor Name | DALTON UTILITIES | Account Designator Code | INDIVIDUAL_ACCOUNT |
| Date Assigned | Apr 24, 2019 | Account Number | xxxxxxxxxxxx 5442 |
| Original Amount Owed | $686 | Creditor Classification | Utilities |
| Amount | $686 | Last Payment Date | |
| Status Date | Jan 21, 2020 | Date of First Delinquency | Mar 14, 2019 |
| Status | UNPAID | | |

**Comments**

Consumer disputes this account information

**Contact**

ONLINE INFORMATION SERVICES
685 W. FIRE TOWER RD.
WINTERVILLE, NC  28590
1-252-757-2101

6

## ONLINE COLLECTIONS

Potentially Negative ⚠️

| | | | |
|---|---|---|---|
| Account Name | ONLINE COLLECTIONS | Balance | $686 |
| Account Number | 314196XXXXXXXXXX | Balance Updated | 01/21/2020 |
| Account Type | Collection | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $0 |
| Date Opened | 04/24/2019 | Original Balance | $686 |
| Status | Collection account. $686 past | Highest Balance | $0 |
| | due as of Jan 2020. | Terms | 1 Months |
| Status Updated | 01/21/2020 | On Record Until | Dec 2025 |

**Payment History**

| LEGEND | C | Collection |
|---|---|---|

| | 2020 | | | | 2019 | | |
|---|---|---|---|---|---|---|---|
| JAN | FEB | MAR | APR | JAN | FEB | MAR | APR |
| ◯ | ◯ | ◯ | ◯ | ◯ | ◯ | ◯ | ◯ |

//usa.experian.com/#/printReport?type=CDI&acr=true

| MAY | JUN | JUL | AUG | MAY | JUN | JUL | AUG |
|---|---|---|---|---|---|---|---|
| ◯ | ◯ | ◯ | ◯ | ◯ | C | C | C |
| SEP | OCT | NOV | DEC | SEP | OCT | NOV | DEC |
| ◯ | ◯ | ◯ | ◯ | C | C | C | C |

### Historical Information

| | |
|---|---|
| First Reported | 06/2019 |
| Original Creditor | DALTON UTILITIES |

### Contact Info

| | |
|---|---|
| Phone Number | - |
| Address | PO BOX 1489 WINTERVILLE, NC 28590 |

### Comment

Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act).

### Reinvestigation Information

### Balance History

| | | | |
|---|---|---|---|
| DEC 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| NOV 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| OCT 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| SEP 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| AUG 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| JUL 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |
| JUN 2019 | $686 | $0 | $0 |
| | Balance | Scheduled Payment | Paid |

29.    The Plaintiff stated that she would be able to make her first installment of $160.00 on March 14th.

30.    The Plaintiff also expressed to the Defendant that she was starting a new job and asked that she not be called by the Defendant until after 5:30 p.m.

31.    The Defendant advised the Plaintiff that unless consented to her agreed upon payments being made by automatic draft, the calls would continue. And because the calls were all made by "automatic dialers" there was no guarantee that she would not get phone calls during the period of time that she was at work. Defendant went on to explain this is necessary due to the sheer volume of accounts they were collecting.

32.    The Defendant concluded by telling the Plaintiff, "I know it's hard for you to ignore (those calls), and I'm sorry if you have someone at your home where you know you don't need those calls, and again, I know you work...I don't want you to think that it's because I just don't want to, we just can't guarantee that."

## INJURIES-IN-FACT

33.    The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health,*

*Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

34.   An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

35.   Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." McCamis, at 4, citing Church, at 3.

36.   Defendant is subjecting Plaintiff to false, deceptive, unfair, and unconscionable means to collect the debt.

37.   Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiffs have suffered an injury-in-fact sufficient to establish Article III standing.

## **DAMAGES**

38.   As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.)   Being subjected to false, deceptive, unfair, and unconscionable debt collection practices;

b.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts; and,

c.) Anxiety and worry caused by concern that Defendant was intending to engage in false credit reporting and would ignore her request to not be called at work.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et. seq.

39. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully stated herein.

### *Violations of 15 U.SC. § 1692e and its subparts*

40. 15 U.S.C. § 1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

41. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

42.    The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

43.    Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

44.    A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

45.    Defendant's representation that it would not, as an apparent matter of policy, report updated payment information to credit reporting agencies to which it reports is a threat to perform an unlawful act. Specifically, it is a threat to violate 15 U.S.C. §§1681s-2(a)(2)(B) and 1681s-2(a)(1)(A).

46.     Defendants representation that it would not report partial payments made by the Plaintiff on her account to credit reporting agencies to which it reports was a threat to communicate to any person credit information which is known or which should be known to be false in violation of 15 U.S.C. § 1692e(8).

47.     Defendant's implicitly threatened to violate 15 U.S.C. §§ 1692c(a)(1) and (a)(3) by representing to the Plaintiff that unless she consented to auto debit for her agreed upon payments, she risked receiving collection calls at work. The prohibition against calling a consumer at times known to be inconvenient or at their place of employment does not allow for the collector to bargain for compliance.

48.     All of the representations set forth herein violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

## COUNT II

## VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

## O.C.G.A. § 10-1-390, et seq.

49.     Plaintiff incorporates by reference paragraphs 1 through 38 and 40 through 47 as though fully stated herein.

50.     O.C.G.A. § 10-1-390 et seq is commonly known as the "Fair Business Practices Act of 1975" (the "GFBPA").

51.    The purpose of the GFBPA, is to protect consumers from unfair and/or deceptive practices in the conduct of any trade or commerce in part or wholly in the state.  O.C.G.A. § 10-1-391.

52.    O.C.G.A. § 10-1-391 directs that the GFPBA is to be interpreted and applied liberally and in harmony with the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which implements the FDCPA.

53.    O.C.G.A. § 10-1-393(a) of the GFBPA broadly prohibits unfair and/or deceptive business practices.

54.    Defendant intentionally engaged in unfair and deceptive business practices, as set forth herein, in an effort to collect a consumer debt.

55.    Defendant's conduct has implications for the consuming public in general.

56.    Defendant's conduct negatively impacts the consumer marketplace.

57.    Upon information and belief, Defendant does not maintain a place of business in Georgia and has no assets in Georgia, thus relieving Plaintiffs of the Notice and Demand requirements of O.C.G.A. § 10-1-399(b).

58.    As a result of Defendant's violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover general damages pursuant to O.C.G.A. § 10-1-399(a).

59.     As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover exemplary damages pursuant to O.C.G.A. § 10-1-399(a).

60.     As a result of Defendant's intentional violations of O.C.G.A. § 10-1-393(a), Plaintiff is entitled to recover treble damages pursuant to O.C.G.A. § 10-1-399(c).

61.     Plaintiff is entitled to recover reasonable attorney's fees and expenses of litigation pursuant to O.C.G.A. § 10-1-399(d).

## **TRIAL BY JURY**

62.     Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.)     Plaintiff's actual damages;

b.)     Statutory damages pursuant to 15 U.S.C. § 1692k;

c.)     Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k

d.)     General, exemplary, and treble damages pursuant to O.C.G.A. § 10-1-399(a) & (c);

e.)     Reasonable attorney's fees and costs pursuant to O.C.G.A. § 10-1-399(d); and

f.)      Such other and further relief as may be just and proper.

Respectfully submitted this  27th day of February, 2020.

**BERRY & ASSOCIATES**

*/s/ Matthew T. Berry*
Matthew T. Berry
Georgia Bar No.: 055663
*matt@mattberry.com*
2751 Buford Highway, Suite 600
Atlanta, GA 30324
Ph. (404) 235-3300
Fax (404) 235-3333

*Plaintiff's Attorneys*

Transcribed 02/27/2020 @ 09:16 EST IScg